# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CRYSTAL BOONE *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 08-1065 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| MOUNTAINMADE FOUNDATION, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION

This case is before the court on the defendant's motion to dismiss.[1]  The plaintiffs commenced this action against the defendant, MountainMade Foundation, asserting claims of retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et. seq.* and wrongful termination in violation of public policy under West Virginia common law, as well as a request for declaratory judgment.  The defendant moves to dismiss the complaint, contending that the plaintiffs have failed to state a claim upon which relief can be granted.

Because the plaintiffs have failed to adequately plead that their activities reasonably could have led to the investigation of a viable FCA claim, the court grants the defendant's motion to dismiss the plaintiffs' retaliation claim under the FCA.  Furthermore, because the

---

[1]  Although the defendant styled its submission as a motion to dismiss "or in the alternative, for summary judgment," *see* Def.'s Mot. at 1, the plaintiff pointed out that the defendant failed to comply with Local Civil Rule 56.1, which requires that every summary judgment motion be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, *see generally* Pl.'s Mot. to Strike.  Accordingly, on April 3, 2009, the court notified the parties that it would construe the defendant's motion solely as a motion to dismiss. Minute Order (Apr. 3, 2009).

FCA-based retaliation claim provided the court with subject matter jurisdiction over this case,

and because the plaintiffs can re-file their common law wrongful discharge claim in state court,

the court declines to exercise supplemental jurisdiction over the plaintiffs' state law claim.  The

court, however, dismisses both the plaintiffs' retaliation claim under the FCA and wrongful

discharge claim without prejudice.  Finally, because the plaintiffs' request for declaratory

judgment is superfluous in light of their FCA claim, the court dismisses this request with

prejudice.

## II.   FACTUAL & PROCEDURAL BACKGROUND

The defendant is a non-profit 501(c)(3) corporation established in West Virginia in 2001

to promote the regional art community.[2]  Am. Compl. ¶ 11.  The defendant receives a portion of

its funding from the federal government through grants from the Small Business Administration

("SBA").  *Id.* ¶ 5.

Plaintiffs Crystal Boone, Melissa Harris, Holly Smith and Charles Barker, all residents of

West Virginia, are former employees of the defendant.  *Id.* ¶¶ 6-10.  Plaintiff Boone began

working for the defendant in 2004.  *Id.* ¶ 33.  In April 2005, she was promoted to Director of

Finance, and in January 2006, to Vice President of Finance.  *Id.* ¶ 34.  From April 2005, Boone

was responsible for "all internal accounting functions," which included "working up the data" for

SBA grant applications, reconciling bank accounts and "posting debit card charges to the books

under its chart of accounts."  *Id.* ¶¶ 35-36.

---

[2]     For purposes of resolving the defendant's motion to dismiss for failure to state a claim on which
relief can be granted, the court accepts all factual allegations in the complaint as true.  *Tellabs,
Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiff Harris was an assistant to Kate McComas, the defendant's President and Executive Director. *Id.* ¶¶ 7, 16. Plaintiff Smith was the defendant's Purchasing Director and reported directly to McComas. *Id.* ¶ 8. Plaintiff Barker served as Operations Director and also reported directly to McComas. *Id.* ¶ 9. Between August 2006 and January 2007, all four plaintiffs were terminated from their positions, allegedly in retaliation for their investigations into McComas's misuse of funds. *Id.* ¶¶ 103-04, 107-08.

The plaintiffs' principle allegations concern the alleged misuse of funds contained in the defendant's bank accounts. *Id.* ¶¶ 33-53. According to the plaintiffs' complaint, the defendant maintained bank accounts at Huntington National Bank, Miners and Merchants Bank and Grant County Bank, each of which allegedly held funds that the defendant had received from the federal government. *Id.* ¶ 31. These accounts were not strictly segregated and money was routinely transferred between them. *Id.* ¶ 31. The defendant maintained a debit card tied to its Huntington National Bank checking account, which was under McComas's exclusive control. *Id.* ¶¶ 16, 30, 38.

Although it was the defendant's policy to reimburse employees for expenses only upon presentation of receipts and proof that the expenditures were business-related, McComas did not adhere to this policy. *Id.* ¶ 39. Indeed, the complaint alleges that Boone received monthly debit card statements from the Huntington National Bank reflecting thousands of dollars of unaccounted-for expenditures made by McComas. *Id.* ¶¶ 37, 42, 44, 46. In March 2006, Boone created a spreadsheet listing the unaccounted-for expenses, which totaled more than $12,000 over a nine-month period. *Id.* ¶ 36 & Ex.1. Boone's investigation of the issue allegedly revealed "with certainty" that McComas had stolen money from the defendant that had been provided by the federal government. *Id.* ¶ 41.

3

Harris, Smith and Barker also conducted separate investigations into McComas's alleged misuse of funds.[3]  *Id.* ¶ 46.  In March 2006, all four plaintiffs met to discuss their individual findings and concluded that McComas had stolen a substantial amount of federal funds.  *Id.* ¶ 50. During this meeting, the plaintiffs designated Boone as the spokesperson for the group and decided that she should first disclose their findings to Toothman Rice, the defendant's accounting firm.  *Id.* ¶¶ 49, 54.  On February 28, 2006, Boone met with William Phillips, the Toothman Rice partner assigned to the defendant's account, and recounted the details of the alleged fraud committed by McComas.  *Id.* ¶¶ 23, 55.  Phillips told Boone that she should report her findings to the defendant's board of directors and warned that her failure to do so could have criminal implications.  *Id.* ¶ 57.

The plaintiffs then decided that Boone should disclose the results of the plaintiffs' investigation to board member Dale McBride.  *Id.* ¶¶ 58-59.  On March 15, 2006, Boone spoke first with McBride, and then with Peter Wolk, counsel to the board, and Jack Carpenter, chairman of the board.  *Id.* ¶¶ 60-62.  On March 16 or 17, 2006, Carpenter asked Boone to have each plaintiff write a letter to the board detailing their complaints regarding McComas.  *Id.* ¶¶ 37, 42.  On March 17, 2006, the plaintiffs sent their letters to Carpenter, McBride and Wolk.  *Id.* ¶ 64.  Boone's letter described McComas's "improper use of SBA monies" as well as "time-sheet fraud and theft."  *Id.* ¶ 65.  Smith's letter also alleged misuse of funds.  *Id.* ¶ 66.  Harris's letter alleged that McComas had misappropriated funds, that Boone's predecessor, Pamela Corey, also believed that McComas had misappropriated funds and that Susan O'Dell, Corey's predecessor, had disclosed the fraud to Laura Kurtz Kuhns, another board member.  *Id.* ¶¶ 17, 25-26, 67.  Barker's letter described McComas's alleged misuse of a company car.  *Id.* ¶ 68.

---

[3]     The complaint does not provide further detail regarding the nature of these investigations.  *See generally* Am. Compl.

4

Carpenter subsequently asked Boone to attend a special meeting of the board on March 23, 2006, which was to be followed by a regular board meeting. *Id.* ¶ 70.  At the special board meeting, which was attended by Carpenter, McBride and Wolk, Boone discussed her allegations regarding McComas. *Id.* ¶ 71.  All three board members assured Boone that she would suffer no reprisal for her actions. *Id.* ¶ 73.  At the subsequent regular board meeting, the board asked McComas to review the expense spreadsheet that Boone had created and to repay any expenses that were personal. *Id.* ¶ 75.  That same evening, McComas announced her resignation. *Id*. ¶ 77.  Two weeks later, however, without any explanation from the board, McComas returned to her position.[4] *Id.* ¶¶ 77-78, 87.

On April 5, 2006, Carpenter met with the plaintiffs and gave them each a letter expressly assuring them that they were each protected from retaliation under the defendant's "whistleblower protection policy." *Id.* ¶¶ 79, 81.  Yet, at a staff meeting held on June 21, 2006 and led by McComas, the plaintiffs were allegedly "demoted, [had] their duties . . . curtailed" and were "implicitly threatened and openly humiliated." *Id.* ¶¶ 96-100.  Barker, Harris and Smith were  terminated on August 17, 2006, September 19, 2006 and January 5, 2007 respectively. *Id.* ¶¶ 97-98, 100, 104.  Boone was demoted to Finance Manager, stripped of her duty as a signatory authority over bank checking accounts and "constructively discharged" on January 12, 2007. *Id.* ¶¶ 99, 108.

On June 20, 2008, the plaintiffs filed a complaint against the defendant. *See generally* Compl.  On September 4, 2008, the defendant filed a motion to dismiss, or in the alternative, for summary judgment. *See generally* Def.'s First Mot. to Dismiss, or in the Alternative, for Summ.

---

[4]    The plaintiffs assert that McComas's resignation was either "rescinded or never intended to take effect" or that the defendant's board of directors "rejected [McComas's] resignation."

J.  The court terminated that motion after the plaintiffs filed an amended complaint, *see* Minute

Order (Mar. 3, 2009), in which they contended that they were retaliated against in violation of

the False Claims Act, were wrongfully terminated in violation of public policy and were entitled

to a declaratory judgment, Am. Compl. ¶¶ 110-28.  On March 20, 2009, the defendant filed this

motion.  *See generally* Def.'s Mot.


### III.  ANALYSIS

#### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002),

or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d

134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing

courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of

facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when

the pleaded factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id*.

       In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67

(D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir.

2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the

court need not accept as true inferences unsupported by facts set out in the complaint or legal

conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C.

Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## B.  The Court Grants the Defendant's Motion to Dismiss

### 1.  The Plaintiffs Have Failed to State a Claim of Retaliation Under the FCA

       The defendant asserts that the plaintiffs have failed to state a claim upon which relief can

be granted because the complaint contains no allegations that the defendant submitted any false

or fraudulent claims to the government. Def.'s Mot. at 5-7. In response, the plaintiffs allege that

their complaint adequately notifies the defendant of the nature of their claims. Pls.' Opp'n at 5-

7.

Section 3730 of the FCA prohibits employers from taking retaliatory actions against employees who initiate, investigate or otherwise participate in FCA actions.[5] 31 U.S.C. § 3730(h).  To assert a claim of retaliation under this section, an employee must demonstrate that he or she engaged in protected activity and that he or she was discriminated against "because of" that activity.[6] *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005) (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998)).  To demonstrate that the employee was engaged in protected activity, it is not necessary for the employee to have initiated a *qui tam* lawsuit under the FCA, nor even to have contemplated doing so.  *Yesudian*, 153 F.3d at 739-41.  Instead, all that is required is that the employee be "investigating matters that 'reasonably could lead' to a viable False Claims Act case."  *Id.* at 739-40; *see also Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67-68 (D.C. Cir. 2008) (concluding that because an employee's investigation of her employer's non-compliance with a court-ordered consent decree could not reasonably have led to a viable FCA claim, the employee's investigation did not constitute protected activity under § 3730(h)) (internal citation omitted); *Martin v. Arc of D.C.*, 541 F. Supp. 2d 77, 83-84 (D.D.C. 2008) (holding that an employer's failure to comply with its government funding requirements did not give rise to a viable claim under the FCA, and that as a result, the plaintiff's investigation of such non-compliance was not protected activity in

---

[5]     The provision states that any employee "shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee" in furtherance of an FCA claim.  31 U.S.C. § 3730(h).

[6]     To establish the second element of a retaliation claim under the FCA, the employee must demonstrate that: (1) the employer knew that the employee was engaged in a protected activity; and (2) the retaliation was motivated, at least in part, by the employee's engaging in the protected activity.  *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (internal citations omitted).  Because this motion is resolved on the first element, the court does not reach this requirement.

furtherance of a viable FCA claim).  "Determining whether an employee has engaged in

protected conduct under the FCA is a 'fact specific inquiry.'"  *Shekoyan*, 409 F.3d at 423 (citing

*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001)).

The version of the FCA applicable to this action[7] provided, in relevant part, that any

person who "knowingly presents, or causes to be presented, to an officer or employee of the

United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. §

3729(a)(1) (repealed 2009), or who "knowingly makes, uses, or causes to be made or used, a

false record or statement to get a false or fraudulent claim paid or approved by the Government,"

*id*. § 3729(a)(2) (repealed 2009), shall be liable to the federal government, *id*. § 3729(a).

The plaintiffs allege that through the actions of McComas, the defendant violated these

provisions of the FCA by submitting fraudulent grant applications to the SBA.  Am. Compl. ¶

36.  More specifically, the plaintiffs suggest that the defendant made false representations in the

grant applications regarding how the funds were to be expended, *id*. ¶ 36, presumably because

---

[7]      On May 20, 2009, Congress enacted the Fraud Enforcement Recovery Act of 2009 ("FERA"), which amended, *inter alia*, §§ 3729(a)(1) and 3729(a)(2) of the FCA.  *See generally* 123 Stat. 1617.  The FERA contains a retroactivity clause, which provides that "[t]he amendments made by this section . . . shall apply to conduct on or after the date of enactment, except that [the amendments to § 3729(a)(2)] *shall take effect as if enacted on June 7, 2008, and apply to all claims . . . that are pending on or after that date*."  123 Stat. at 1625 (emphasis added).  Because the conduct underlying the plaintiffs' allegations occurred well before the enactment of the FERA, its amendments to § 3729(a)(1) do not apply here.  *See id*.  Moreover, because the purportedly false claims for payment at issue here were made in 2006, *see* Am. Compl. ¶¶ 33-46, and because there is no indication that they were still pending as of the June 7, 2008 cutoff date provided for in the FERA's retroactivity clause, the FERA's amendments to § 3729(a)(2) likewise do not apply.  *See U.S. Sci. Applications Int'l Corp.*, 2009 WL 2929250, at *14 (D.D.C. Sept. 14, 2009) (holding that the FERA's amendments did not apply because the legislative history makes clear that the FERA uses the term "'claims' to refer to a defendant's request for payment and 'cases' when discussing civil actions for FCA violations" and the "claims" at issue were not pending on June 7, 2008); *accord United States ex rel. Sanders v. Allison Engine Co.*, 2009 WL 3626773, at *3-4 (S.D. Ohio Oct. 27, 2009) (holding that the legislative history supports the conclusion that had Congress meant for subsection 4(f)(1) to apply to pending "cases" rather than "claims," it would have said so explicitly); *see also* 31 U.S.C. § 3729(c) (defining a "claim" for purposes of the FCA as a "request or demand    . . . for money or property").

McComas knew that she would use these grant funds for personal purposes, *see id.* ¶¶ 43-50 &
Ex. 2.

    These allegations, however, fall short in at least two critical respects.  First, a plaintiff
claiming an FCA violation must satisfy the heightened pleading requirements of Federal Rule of
Civil Procedure 9(b).[8]  *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-
52 (D.C. Cir. 2002) (noting that "[e]very circuit to consider the issue has held that, because the
False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply
with Rule 9(b)") (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *United
States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997);
*Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995)); *Shekoyan v. Sibley Int'l
Corp.*, 217 F. Supp. 2d 59, 64 (D.D.C. 2002) (applying Rule 9(b)'s heightened pleading
requirement to a retaliation claim under the FCA); FED. R. CIV. P. 9(b) (requiring a party alleging
fraud to "state with particularity the circumstances constituting fraud or mistake").  The
"circumstances" that the claimant must plead with particularity include matters such as the time,
place, and content of the false misrepresentations, the misrepresented fact and what the opponent
retained or the claimant lost as a consequence of the alleged fraud.  *Id.*; *see also Columbia/HCA
Healthcare*, 125 F.3d at 903 (holding that Rule 9(b) requires an individual asserting a claim
under the FCA to "set forth the 'who, what, when where, and how' of the alleged fraud").

    Here, the plaintiffs have offered no allegations regarding the content of the allegedly false
grant applications submitted to the SBA.  *See generally* Am. Compl.; Pls.' Opp'n.  Nor have the
plaintiffs offered any specific allegations regarding any false representations made by McComas,
to the defendant or to the government, regarding her use of the defendant's debit card.  *See*

---

[8]     The plaintiffs do not dispute that Rule 9(b)'s heightened pleading requirements apply to
        retaliation claims brought under the FCA.  *See* Pls.' Opp'n at 7.

*generally* Am. Compl.; Pls.' Opp'n.  These failures require dismissal of the plaintiffs' complaint.

*See Totten*, 286 F.3d at 552 (holding that the plaintiff was required to provide "a more detailed

description of the specific falsehoods that are the basis for his suit"); *see also Gublo v.

NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999) (dismissing certain FCA claims

because the plaintiffs simply alleged three methods by which the company purportedly inflated

its bills to the government, without citing a single instance of a false claim).

Second, in order to state a viable claim under § 3729(a)(2), the plaintiff must supply

factual allegations indicating that false representations were made with the intention that it would

result in the government's payment of a claim.  *See Allison Engine Co. v. United States ex rel.

Sanders*, 128 S. Ct. 2123, 2126 (2008) (holding that an assertion that government funds were

used to pay a false or fraudulent claim, without assertions that the defendant intended that the

government itself pay the claim, is insufficient under § 3729(a)(2) of the FCA), *superseded by

statute*, Pub. L. No. 111-21, § 4, 123 Stat. 1617 (FERA).[9]  *Allison Engine* concerned an FCA

claim brought against a subcontractor that had allegedly submitted false invoices to a shipbuilder

that had contracted with the United States Navy for the construction of a fleet of destroyers.  *Id*.

at 2126.  Employees of the subcontractor commenced a *qui tam* action, alleging that their

employer had violated § 3729(a)(2) because federal monies would be used to pay the invoices.

*Id*. at 2127.

As the Supreme Court explained, § 3729(a)(2) required that the defendant make a false

record or statement "to get" a false or fraudulent claim paid by the government, indicating that

the person must have had the purpose of getting a false claim paid by the government.  *Id*. at

---

[9]     The FERA superseded the holding of *Allison Engine Company v. United States ex rel. Sanders*,
128 S. Ct. 2123, 2126 (2008) regarding the scope of liability under § 3729(a)(2).  However, as
previously noted, these amendments do not apply in this case.  *See supra* n.8.

2128.  The Court noted that it was not sufficient for a plaintiff to show that a false statement

resulted in the use of government funds to pay a false or fraudulent claim.  *Id*.  Rather, the Court

explained,

> a subcontractor violates § 3729(a)(2) if the subcontractor submits a false
> statement to the prime contractor intending for the statement to be used by the
> prime contractor to get the Government to pay its claim.  If a subcontractor or
> another defendant makes a false statement to a private entity and does not intend
> the Government to rely on that false statement as a condition of payment, the
> statement is not made with the purpose of inducing payment of a false claim 'by
> the Government.' In such a situation, the direct link between the false statement
> and the Government's decision to pay or approve a false claim is too attenuated
> to establish liability.

*Id*. at 2130 (internal citations omitted).

One Circuit has described the dichotomy drawn by the Supreme Court in *Allison Engine*

in the following manner:

> Without question, *Allison Engine* categorically precludes liability under the FCA
> when fraudulent claims induce private entities to disburse federal funds over
> which the private entity has complete control.  *In other words, if the federal
> government provides money in a lump sum to a grantee, and is thereafter
> uninvolved in the disbursement of the funds, the FCA does not apply*.  However,
> the Court left open the possibility that, if the federal government is somehow
> involved in the grantee's disbursement of federal money, FCA liability may
> exist.  The Court used the following hypothetical to explain: a subcontractor
> creates an invoice that relies on a false statement, and the subcontractor submits
> that invoice to the prime contractor; the prime contractor relies on the
> subcontractor's invoice to generate its own invoice, which the prime contractor
> submits to the federal government.  Under this scenario, the subcontractor
> intentionally used a false claim to induce payment by the federal government,
> albeit indirectly.  Therefore, the subcontractor's actions would fall within the
> ambit of the FCA.

*U.S. Dep't of Transp. ex rel. Arnold v. CMC Eng'g*, 564 F.3d 673, 678 (3d Cir. 2009) (emphasis

added); *see also United States ex rel. Ven-A-Care v. Actavis Mid Atl. LLC*, 2009 WL 3171798, at

*7 (D. Mass. Oct. 2, 2009) (noting that "the FCA does not cover cases where false statements are

used to get a piece of a block grant, already approved by the government; that is, the FCA does

not cover scenarios where subcontractors defraud contractors, with no indication that the government was meant to pick up the bill").

The plaintiffs' complaint is devoid of allegations indicating that by using the defendant's debit card for her personal expenses, McComas intended for the federal government to pay for those expenditures. *See generally* Am. Compl. Indeed, if it is the case that McComas's false representations merely resulted in the misuse of federal funds already disbursed to the defendant, the plaintiffs' investigation could not reasonably have led to a viable FCA action under § 3729(a)(2). *See Ven-A-Care*, 2009 WL 3171798, at *7. The plaintiffs' complaint offers insufficient allegations for the court to conclude on which side of the divide their claim falls.

Accordingly, because the plaintiffs have failed to plead with particularity facts that would demonstrate that their investigation reasonably could have led to a viable FCA claim, and specifically failed to allege that McComas acted with the requisite intent, the court grants the defendant's motion to dismiss this claim. In light of the nature of the deficiencies in the complaint, however, the court declines to dismiss the plaintiffs' claim with prejudice. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (noting that "[a] dismissal with prejudice is warranted only when a trial court 'determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency'") (quoting *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (internal quotation marks omitted); *cf. Belizan v. Hershon*, 434 F.3d 579, 583-84 (D.C. Cir. 2006) (remanding a claim dismissed with prejudice to the district court for a determination as to whether allegations of other facts consistent with the challenged pleading could not satisfy the relevant pleading requirements). Because the court cannot conclude at this time that no set of allegations

consistent with the proposed claims could satisfy the relevant pleading requirements, the court

dismisses the plaintiffs' FCA retaliation claim without prejudice.

### 2. The Court Declines to Exercise Supplemental Jurisdiction Over the Plaintiffs' Common Law Wrongful Termination Claim

The defendant contends that the plaintiffs' claim of wrongful termination in violation of

public policy under West Virginia common law cannot be maintained because the FCA provides

a comprehensive remedy for the alleged wrongdoing. Def.'s Mot. at 10. In response, the

plaintiffs argue that the anti-retaliation provisions of the FCA do not preclude a claim for

wrongful termination in violation of public policy, which, they assert, is substantially different

from an action under § 3730(h) of the FCA and which requires a lesser standard of proof. Pls.'

Opp'n at 8.

Under 28 U.S.C. § 1367, a district court that has original jurisdiction in a civil action

"shall have supplemental jurisdiction over all other claims that are so related." *Id.* § 1367(a).

District courts also, however, have the discretionary authority to retain or dismiss such

supplemental claims when the district court has dismissed all claims over which it has original

jurisdiction. 28 U.S.C. § 1367(c)(3). In determining whether to retain or dismiss supplemental

state law claims, "the district court is to be 'guided by consideration of the factors enumerated in

28 U.S.C. § 1367(c).'" *Shekoyan*, 409 F.3d at 424 n.4 (citing *Edmondson & Gallagher v. Alban

Towers Tenant Ass'n*, 48 F.3d 1260, 1266 (D.C. Cir. 1995)). Furthermore, district courts are to

consider the § 1367(c) factors within the framework of "judicial economy, convenience, fairness,

and comity." *Edmondson & Gallagher*, 48 F.3d at 1266. "[I]n the usual case in which all

federal-law claims are dismissed before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point

14

toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan*, 409

F.3d at 423-24 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

   With the dismissal of the plaintiffs' claim under the FCA, the plaintiffs' amended

complaint contains no further federal causes of action over which this court has original subject

matter jurisdiction. *See generally* Am. Compl.  The court therefore has the discretionary

authority to dismiss the state law claim under § 1367(c)(3) and chooses to exercise this authority.

*See Shekoyan*, 409 F.3d at 423-24 (holding that the district court did not abuse its discretion in

dismissing a pendent state law claim after granting summary judgment in favor of the defendant

on the plaintiff's FCA retaliation claim); *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033,

1043 (D.C. Cir. 2003) (affirming the district court's dismissal of pendent state law claims after

the federal claims were resolved in favor of the defendant).

   Because the court has yet to invest substantial time and resources on the state law claim,

judicial economy does not weigh against dismissal. *Shekoyan*, 409 F.3d at 423-24.  Furthermore,

there are no other reasons apparent to the court indicating that dismissal will inhibit or prejudice

the plaintiffs' ability to re-file their state law claim in state court. *Cf.* 28 U.S.C. § 1367(d)

(providing that the statute of limitations for a supplemental state law claim is tolled "while the

claim is pending and for a period of 30 days after it is dismissed unless State law provides for a

longer tolling period").  The court therefore dismisses without prejudice the plaintiffs' claim of

wrongful termination in violation of public policy under West Virginia common law.

### 3.  The Court Dismisses the Plaintiffs' Request for a Declaratory Judgment

   The plaintiffs seek a declaratory judgment that their actions constituted protected activity

under the FCA. *See* Am. Compl. ¶ 136.  The defendant argues that the court should dismiss the

plaintiffs' request for a declaratory judgment because the plaintiffs are attempting to utilize the

declaratory judgment as a means of establishing an essential element of their claim under the FCA, and because the plaintiffs' declaratory judgment claim duplicates its FCA claim.  Def.'s Mot. at 12-14.  The plaintiffs respond that a declaratory judgment is appropriate when it will "'terminate the controversy' giving rise to . . . undisputed or relatively undisputed facts."  Pls.' Opp'n at 8.  The plaintiffs, however, offer no response to the defendant's argument that their claim for declaratory judgment is redundant of their FCA claim.  *See id*.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Accordingly, courts have broad discretion to decline to enter declaratory judgments.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citing repeated Supreme Court characterizations of the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant") (internal citations omitted).

In this case, the plaintiffs seek a declaration that "their disclosures . . . were for purposes of initiating a *qui tam* action within the meaning of the False Claims Act."  Am. Compl. ¶ 136. Yet, as previously discussed, in order for the plaintiffs to succeed on their retaliation claim, they will be required to demonstrate that they were "investigating matters that 'reasonably could lead' to a viable False Claims Act case."  *Shekoyan*, 153 F.3d at 739-40.  Thus, the declaratory relief sought by the plaintiffs duplicates their retaliation claim under the FCA, and will be rendered moot by the disposition of that claim.  *See De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, 2009 WL 678625, at *6-7 (E.D. Pa. Mar. 16, 2009) (holding that a court may dismiss a declaratory judgment claims "as superfluous when it is clear that there is a 'complete identity of

factual and legal issues' such that they serve no 'useful purpose'"); *Waller v. DB3 Holdings, Inc.*, 2008 WL 373155, at *3 (N.D. Tex. Feb. 12, 2008) (noting that "'[w]hen the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim,' courts often exercise their discretion to dismiss the counterclaim 'on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot'" (quoting 6 FED. PRAC. & PROC. § 1406); *see also Pub. Serv. Comm'n of Utah v. Wycoff, Co., Inc.*, 344 U.S. 237, 240 (1952) (observing that there must be "some useful purpose to be achieved in deciding" a controversy that a party seeks to have resolved through a declaratory judgment claim); *cf. Wilton* 515 U.S. at 283 (observing that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed") (internal citation omitted).  Accordingly, the court dismisses with prejudice the plaintiffs' request for a declaratory judgment.


## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the plaintiffs' amended complaint.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of February, 2010.


RICARDO M. URBINA
United States District Judge