UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRYSTAL BOONE, *et al.*,

   Plaintiffs,

     v.

MOUNTAINMADE FOUNDATION,

   Defendant.

Civil Action No. 08-1065 (CKK)

**MEMORANDUM OPINION**
(April 30, 2012)

     Plaintiffs Crystal Boone, Melissa Harris, Charles Barker, and Holly Smith (collectively "Plaintiffs") filed suit alleging their former employer, Defendant MountainMade Foundation, retaliated against and wrongfully terminated the Plaintiffs for reporting to MountainMade's Board of Directors that another employee submitted fraudulent requests for reimbursement to the United States Small Business Administration. Presently before the Court is Defendant's [35] Motion to Dismiss Count II of Plaintiffs' Second Amended Complaint. Upon consideration of the parties' submissions[1] and the relevant legal authorities, Defendant's motion is DENIED.

**I. BACKGROUND**

     The MountainMade Foundation "support[s] and develop[s] the West Virginia arts and

---

[1] Defendant incorporated by reference arguments made in connection with its prior motion to dismiss but not ruled upon previously by the Court. Therefore, the Court focused on the following submissions from the parties, in chronological order of filing: Defs.' Mot. to Dismiss the Am. Compl., ECF No. [15] ("Defs.' First Mot."); Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [22]; Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. [23]; Def.'s Mot. to Dismiss Count II of Pls.' Second Am. Compl., ECF No. [35] ("Def.'s Second Mot."); Pls.' Opp'n to Def.'s Mot. to Dismiss Count II of Pls.' Second Am. Compl., ECF No. [38]; Def.'s Reply in Supp. of Mot. to Dismiss Count II of Pls.' Second Am. Compl., ECF No. [39].

crafts small businesses by assisting them with effective marketing of their work, expanding their businesses and increasing demand for their work." http://www.mountainmade.com/about/ (last accessed April 30, 2012); Second Am. Compl., ECF No. [33], ¶ 11.  As part of this mission, MountainMade operates a "Country Store" and two retail art galleries offering for sale works of art from West Virginia artists.  Second Am. Compl. ¶ 11.  MountainMade's business model relies in large part on grants from the Small Business Administration ("SBA").  *Id.* at ¶ 15.  Although the precise funding structure is not clear from the pleadings, Plaintiffs indicate that MountainMade provides two types of submissions to the SBA: (1) proposed budgets, submitted each spring for the fiscal year to begin October 1; and (2) requests for reimbursement for actual expenditures, submitted at the end of each quarter.  *Id.* at ¶¶ 17-21.

The focal point of Plaintiffs' allegations is Kate McComas, the President and Executive Director of MountainMade.  Second Am. Compl. ¶ 12.  Plaintiffs claim that between (at least) 2004 and 2006, McComas engaged in financial misconduct by (1) "us[ing] the MountainMade debit card to make purchases and expenditures fro her own personal benefit," *id.* at ¶¶ 26-30; (2) working fewer than 40 hours per week despite being classified as a full time employee, *id.* at ¶ 32; and (3) using the company vehicle for personal use and failing to log miles traveled in the vehicle, *id.* at ¶¶ 35-36.  McComas purportedly submitted fraudulent requests for reimbursement to the SBA for her personal expenses, unearned salary, and personal travel.  *Id.* at ¶¶ 31, 34, 38.

Throughout the relevant time period, the Plaintiffs served in a variety of roles at MountainMade, including Vice President of Finance (Plaintiff Boone), assistant to McComas (Plaintiff Harris), Purchasing Director (Plaintiff Smith), and Operations Director (Plaintiff Barker).  Second Am. Compl. ¶¶ 6-9.  Plaintiffs claim to have discovered McComas'

wrongdoing through various means, "pooled their information," and "realized that together they had evidence of a fraud on the United States Government." *Id.* at ¶ 60. On behalf of the Plaintiffs collectively, Plaintiff Boone reported McComas' actions to a member of the MountainMade Board of Directors. *Id.* at ¶¶ 64-66. Subsequent to the disclosure, the Board of Directors purportedly did not undertake an investigation into the allegations, but instead retaliated against the Plaintiffs by instructing Plaintiffs not to communicate with McComas, *id.* at ¶¶ 81-82, restricting the flexibility of Plaintiffs' work schedules, *id.* at ¶¶ 81, 84, demoting Plaintiffs Smith, Barker and Boone, and removing supervisory roles and other responsibilities from the Plaintiffs, *id.* at ¶¶ 85-89. Plaintiff Harris claims to have been fired, and Plaintiff Boone alleges she (Boone) was constructively discharged. *Id.* at ¶¶ 81, 93.

Plaintiffs filed suit against MountainMade Foundation, McComas, and Jack R. Carpenter on June 20, 2008 asserting claims for violation of the whistleblower provisions of the False Claims Act, 31 U.S.C. § 3730(h), common law wrongful discharge in violation of public policy, and civil conspiracy. Compl., ECF No. [1], ¶¶ 127-143. The First Amended Complaint omitted McComas and Carpenter as defendants, withdrew the claim of civil conspiracy, and included a new count seeking a declaratory judgment. First Am. Compl., ECF No. [14], ¶¶ 135-36. The Court (per Judge Ricardo M. Urbina) granted Defendants' motion to dismiss the First Amended Complaint, dismissing the False Claims Act count without prejudice, and declining to exercise supplemental jurisdiction over the remaining claims. 2/15/2010 Mem. Opin. at 14-15. The Court (per Judge Urbina) subsequently granted Plaintiffs' motion to amend the complaint on April 7, 2011, and docketed the Second Amended Complaint.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint.  *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 2064 (2010).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Additionally, in deciding a Rule 12(b)(6) motion, a court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,'" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)), or "'documents upon which the plaintiff's complaint necessarily relies' even if the document is produced not by [the parties]," *id.* (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

## III.  DISCUSSION

Despite having two opportunities to brief the issue, the parties have largely succeeded in obfuscating their own arguments and the issues to be determined by the Court.  Compounding

this lack of clarity, Defendant relies almost entirely on portions of a brief written in reference to the First Amended Complaint, rather than the significantly revised Second Amended Complaint, which is now before the Court. Nevertheless, the Court understands Defendant to contend that the Second Amended Complaint should be dismissed because West Virginia common law does not provide for a wrongful discharge in violation of public policy cause of action where (1) the plaintiff relies on a statute to establish the relevant "public policy"; and (2) that statute provides a "comprehensive remedy" for any wrongdoing.[2] Plaintiffs argue that the state law claim requires a lower standard of proof and otherwise is not duplicative of their False Claims Act claim, the Federal Rules of Civil Procedure allow Plaintiffs to plead in the alternative, the "public policy" underlying the wrongful discharge claim is not derived from the False Claims Act, and West Virginia common law does not preclude a wrongful discharge claim even where a statute provides a comprehensive remedy. The Court will evaluate each argument in turn.

---

[2] Defendant's initial motion to dismiss included two additional arguments Defendant does not appear to renew. First, Defendant previously argued that the Plaintiffs failed to allege any fraudulent submissions to the SBA that could be considered violations of public policy, a necessary component of Plaintiffs' wrongful discharge claim. Defs.' First Mot. at 10. At least for purposes of the pleading stage of this proceeding, Plaintiffs cured this defect. Second Am. Compl. ¶¶ 31, 34, 38. Second, Defendant briefly argued in its first motion that the False Claims Act *preempted* a state cause of action for wrongful discharge. Defs.' First Mot. at 10. Defendant's renewed motion makes no reference to the preemption doctrine or the Court's subject matter jurisdiction, therefore the Court does not reach this issue. *See* Def.'s Second Mot. at 1-2. It is worth noting that several courts have considered and rejected the argument that state wrongful discharge claims—statutory or common law—are preempted by the False Claims Act. *E.g.*, *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 945 (7th Cir. 2002) ("There is nothing in § 3730(h) to lead us to believe that Congress intended to preempt all state law retaliatory discharge claims based on allegations of fraud on the government."); *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 608-09 (D. Md. 2008); *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1059 (C.D. Cal. 2000); *Palladino ex rel. United States v. VNA of S. N.J., Inc.*, 68 F. Supp. 2d 455, 465-74 (D.N.J. 1999).

First, Plaintiffs argue that their wrongful discharge claim requires a lower standard of proof, and thus is not duplicative of their claim under the False Claims Act.  Relatedly, Plaintiffs contend that the Federal Rules of Civil Procedure authorize pleading in the alternative in the event the wrongful discharge and False Claims Act cases are considered duplicative.  This argument is misplaced, though through no fault of the Plaintiffs.  Defendant inartfully describes the wrongful discharge claim as "duplicative" of Plaintiffs' other claim.  Def.'s Second Mot. at 2.  However, the crux of Defendant's argument is not that the claims are duplicative, but rather that a claim for wrongful discharge in violation of public policy *does not exist* under West Virginia law when the public policy is derived from a statute that contains a comprehensive remedial scheme.  If state law does not authorize the claim, Plaintiffs are precluded from raising the claim regardless of the elements of the various claims or the requirements of the Federal Rules.

Plaintiffs' third argument attempts to undercut the fundamental premise of Defendant's motion: that Plaintiffs' wrongful discharge claim relies on the False Claims Act to establish the public policy at issue.  Plaintiff's Second Amended Complaint provides little explanation of exactly what public policy they are relying on to establish a claim of "wrongful discharge in violation of public policy," except to say that "Defendant terminated Plaintiffs unlawfully because of, and as a direct and proximate outcome of [P]laintiffs' *protected whistleblowing activities*."  Second Am. Compl. ¶ 131 (emphasis added).  Plaintiffs assert that under the common law of West Virginia, "it is against public policy to 'knowingly perpetrate a fraud or deception on the federal . . . government.'"  Pl.'s Opp'n at 2 (quoting *Kanagy v. Fiesta Salons, Inc.*, 541 S.E.2d 616, 623 (W. Va. 2000)).  Although it is not clear that the Second Amended

Complaint actually refers to the *Kanagy* court's articulation of a "public policy" as the basis for Count II, the Court need not decide the issue because the Court finds West Virginia law permits Plaintiffs' wrongful discharge claim even if based solely on the public policy embodied in the False Claims Act.

Plaintiffs' fourth and final argument reflects a fundamental disagreement with Defendant as to scope of wrongful discharge claims in West Virginia. The parties' arguments on this point are two ships passing in the night, relying on separate lines of case law without examining how they intersect. In *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), the West Virginia Supreme Court of Appeals recognized an exception to the rule that employers have unlimited discretion to terminate at-will employees, holding:

> We conceive that the rule giving the employer the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge.

*Id.* at 275. The court later explained how to determine when a "substantial public policy principle" exists:

> To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions. Finally, inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person.

*Tudor v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 554, 565 (W. Va. 1997) (internal citations and quotations omitted).[3]

---

[3] Defendant does not challenge Plaintiffs' assertion that West Virginia would recognize a public policy reflecting the whistleblower protections in the False Claims Act, therefore the Court does not undertake the analysis outlined in *Tudor*.

Separately from the issue of terminating at-will employees, the West Virginia courts have analyzed in what contexts the remedies proscribed in a statute are exclusive, that is, when does a statute's remedial scheme preclude common law claims. "When a statute creates a new offence and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes." *Wiggins v. E. Associated Coal Corp.*, 357 S.E.2d 745, 747 (W. Va. 1987) (quoting *Lynch v. Merch. Nat'l Bank*, 22 W. Va. 554, Syl Pt. 2 (1883)). Under Defendant's view then, since the False Claims Act creates a new right and declares the remedy, Plaintiff is limited to a cause of action under that statute.

The broad language in *Lynch* belies two fundamental points. First, the concept of exclusivity of remedies proscribed in *Lynch* in practice arises only in the context of statutes that provide *administrative* remedies for wrongful termination claims. *See Sturm v. Bd. of Educ. of Kanawha Cnty.*, 672 S.E.2d 606, 611 (W. Va. 2008) (noting the purpose of the exclusivity doctrine is to preserve and respect agency expertise and discretion); *Wiggins*, 357 S.E.2d at 747-48 (analyzing whether administrative remedies for retaliatory discharge after reporting mine safety violations preclude common law wrongful termination suits). Thus, in most cases, the focus is not on whether a civil suit is entirely precluded, but whether the plaintiff must exhaust administrative remedies before resorting to the Courts. *E.g.*, *Collins v. Elkay Min. Co.*, 371 S.E.2d 46, 48-49 (W. Va. 1988); *Price v. Boone Cnty. Ambulance Auth.*, 337 S.E.2d 913, 915-916 (W. Va. 1985). The court in *Johnson v. Killmer*, 633 S.E.2d 265 (W. Va. 2006), is the only court to invoke the phrase "comprehensive remedy" as used by Defendant in its pleadings. However, the remedies at issue in *Johnson* are the same as in *Price*: the administrative remedies under the Human Rights Act. *Id.* at 268 n.8. In this case, the False Claims Act does not create

an administrative remedial process, therefore *Lynch* and the exclusive remedy principle is inapplicable.

Second, Defendant failed to identify a single case in which the West Virginia courts applied the exclusive remedy doctrine and found that the plaintiff *could not* bring a civil action for wrongful discharge in violation of public policy.  Rather, in both *Collins* and *Price*, the courts found the plaintiffs were free to pursue wrongful discharge claims in the courts without exhausting the administrative remedies proscribed in the relevant statutes.  *Collins*, 371 S.E.2d at 51; *Price*, 337 S.E.2d at 915.  This result is not surprising in light of the fact the statutes "are to be construed liberally in favor of their intended beneficiaries." *Wiggins*, 357 S.E.2d at 748. Additionally in *Johnson*, the court did not even reach the threshold question of whether the plaintiff had identified a substantial public policy.  The *Johnson* court instead assumed the plaintiff could bring claims for wrongful discharge in violation of public policy for age discrimination and age-based harassment, and found plaintiff failed to make a prima facie case in support of either claim.  633 S.E.2d at 269-70.  The only case cited by Defendant that denied the plaintiff the opportunity to pursue a common law wrongful discharge claim relied on federal preemption doctrine, an argument abandoned by Defendant in this case.  *Lontz v. Tharp*, 647 S.E.2d 718, 723 (W. Va. 2007) (finding the National Labor Relations Act preempted a state law claim for wrongful termination in violation of public policy based on purported anti-union sentiment).

None of the remaining cases cited by the Defendant provide any support for the notion that this Court should preclude an otherwise available common law cause of action for wrongful discharge in violation of public policy because of the civil suit provision of the False Claims Act.

Defendant relies primarily on *Glynn v. Edo Corp.*, 536 F. Supp. 2d 595 (D. Md. 2008), which Plaintiffs correctly note concerns wrongful discharge claims under New Hampshire and Maryland law. *Id.* at 612-13. The *Glynn* court found that since the False Claims Act provided a civil remedy, "Maryland law precludes the use of the wrongful discharge tort to recover in the name of the same public policy interest." *Id.* at 616. However, the court also concluded "New Hampshire does not preclude a common law wrongful discharge claim simply because a federal statute provides a private right of action." *Id.* at 613. Likewise, Defendant's emphasis on *Kakeh v. United Planning Org., Inc.*, 537 F. Supp. 2d 65 (D.D.C. 2008) is misplaced. In *Kakeh*, Judge Gladys Kessler noted that the District of Columbia equivalent of the *Lynch* exception "does not apply 'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation.'" *Id.* at 72 (quoting *Nolting v. Nat'l Capital Grp.*, 621 A.2d 1387, 1389-90 (D.C. 1993)). Ultimately *Glynn* and *Kakeh* provide no guidance to this Court because they interpreted different states' laws, and Defendant does not contend that West Virginia law is similar to these states, or that West Virginia courts look to Maryland or District of Columbia law for guidance. Therefore, the Court finds the *Lynch* exclusive remedy principle inapplicable in this case, and Plaintiffs' claim for wrongful discharge in violation of public policy may proceed

### IV.  CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs may bring a claim for wrongful discharge in violation of public policy under West Virginia law. West Virginia recognizes an

exception to the discretion of employers to terminate at-will employees when the motive for the termination violates substantial public policy.  Even though Plaintiffs rely on the False Claims Act for the "public policy" in this case, under West Virginia law, the existence of a civil remedy in the act does not preclude Plaintiffs from also raising a claim for wrongful discharge in violation of public policy.  Therefore, Defendant's [35] Motion to Dismiss Count II of Plaintiffs' Second Amended Complaint is DENIED.

An appropriate Order accompanies this Memorandum Opinion.

Date:   April 30, 2012

  /s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
